IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RICHARD E. FISCHBEIN, MD, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-373 |
| v. | ) ) | CLASS ACTION |
| IQVIA, INC., | ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Richard E. Fischbein, MD ("Plaintiff"), brings this action on behalf of himself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or his attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendant IQVIA, Inc. ("Defendant"):

## PRELIMINARY STATEMENT

1.      Defendant has sent unsolicited advertisements by facsimile to Plaintiff and others in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, including regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA"), and in violation of N.C. Gen. Stat. Ann. § 75-115, *et seq.* ("North Carolina Unsolicited Facsimile Act" or "NCUFA").

2.      Defendant sent Plaintiff at least two unsolicited advertisements by facsimile. True and correct copies of those facsimiles are attached as Exhibit A and

Exhibit B. Defendant sent the same or substantially similar facsimiles to the other class members.

3.     Defendant is engaged in data mining for the healthcare industry. Defendant collects human health data for its customers and to add to its commercially-available database. For example, Defendant compensates physicians to provide information about drug prescriptions and aggregates, organizes, and sells such data to support the marketing efforts of drug makers and others.

4.     Plaintiff is a physician. Defendant's faxes solicited his participation in Defendant's data-collection business. According to the faxes, Defendant would compensate Plaintiff with points redeemable in a "rewards program" for merchant gift cards, event tickets, and merchandise, in exchange for Plaintiff sharing patient information with Defendant twice per quarter.

5.     Plaintiff did not expressly invite or give express permission to receive any advertisement from Defendant by fax. Plaintiff does not have an established business relationship with Defendant and, even if he did, Defendant's faxes do not contain an opt-out notice that complies with the requirements of either the TCPA or the NCUFA.

6.     Plaintiff brings this action pursuant to the TCPA and the NCUFA on behalf of a nationwide class of all persons or entities sent one or more of Defendant's telephone facsimile messages ("faxes") soliciting participation in one or more studies or surveys in exchange for compensation, such as points in Defendant's rewards program or direct payment of money.

2

7.     On behalf of the class, Plaintiff seeks: (a) statutory damages for each violation of the TCPA, trebling of those statutory damages if the Court determines Defendant's violations were knowing or willful, and an injunction to halt Defendant's unlawful fax advertisement program; and (b) statutory damages for each violation of the NCUFA, reasonable attorneys' fees if the Court finds Defendant willfully engaged in the act or practice, and an injunction to halt Defendant's unlawful fax advertising program.

8.     The NCUFA regulates fax advertisements sent in and from North Carolina and provides higher minimum statutory damages than the TCPA.

## PARTIES, JURISDICTION, AND VENUE

9.     Plaintiff, Dr. Richard E. Fischbein, is a Pennsylvania resident and a physician in psychiatry in a practice located in Kingston, Pennsylvania.

10.     Defendant, IQVIA, Inc., is a Delaware corporation with its principal place of business in Durham, North Carolina.

11.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under federal law, 47 U.S.C. § 227. *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012). The Court also has supplemental jurisdiction over the state law claims arising under the NCUFA. 28 U.S.C. § 1367.

12.     Personal jurisdiction exists over Defendant in North Carolina because its principal place of business is in the State, because Defendant transacts business within the State, and because Defendant committed tortious acts by causing the

3

transmission of unlawful communications within the State.

13. Venue is proper in the Middle District of North Carolina because Defendant is located within this District, Defendant committed statutory torts within this District, and a significant portion of the events took place here.

## FACTS

14. Defendant sent unsolicited advertisements by facsimile to Plaintiff and a class of similarly-situated persons.

15. Plaintiff has received at least two of Defendant's advertisements by facsimile. A true and correct copy of a fax Plaintiff received on November 29, 2017, is attached as Exhibit A. A true and correct copy of a fax Plaintiff received on July 24, 2018, is attached as Exhibit B.

16. Exhibit A and Exhibit B are one-page documents Defendant sent by fax, soliciting Plaintiff's participation in studies or surveys in which Defendant expected to gather valuable information from Plaintiff in exchange for compensation.

17. Exhibit A seeks physician participation in the National Disease and Therapeutic Index ("NDTI").

18. The NDTI is a commercial database that was maintained by IMS Health[1] and commercially available to pharmaceutical manufacturers and other members of the healthcare industry.

19. On information and belief, the data in the NDTI is gathered in an

---

[1]    IMS Health, Inc. and Quintiles IMS Health, Inc. merged and now do business as IQVIA.

ongoing fashion from a panel of over 3,000 physicians of various specialties. Physicians submit quarterly reports that include diagnostic information and prescriptive trends broken down by medical specialty, patient profile, desired effects and co-prescriptions. When a physician writes and reports the prescription, not only is the usual information reported (drug name, amount, dosing instructions and duration), but also the indication for the drug, the patient's gender, age, sex, and method of payment, the site of the prescription (hospital, clinic, etc.), other drugs the patient is taking, other diagnoses, and some physical exam and laboratory data. This data, excluding patient identification, is provided to the company for inclusion to the database.[2]

20.     The NDTI data is most often used by pharmaceutical manufacturer marketing departments for promotional and strategic planning purposes.

21.     Exhibit B solicited Plaintiff's valuable participation in a supposed "research study" in exchange for compensation.

22.     Exhibit A and Exhibit B contain Defendant's logo and trademark information and neither fax is purely informational or part of an ongoing transaction.[3]

23.     Exhibit A and Exhibit B advertise the commercial availability or

_____

[2]     David B. Nash, MD, MBA, *National Drug and Therapeutic Index*, 27 No. 11 P&T 530 (November 2002) (discussing the NDTI; specifically discussing the NDTI's purpose as a commercially available product, purchased by the healthcare industries). Exhibit C.
[3]     On November 6, 2017, QuintilesIMS announced that it changed its name to IQVIA. Its name change took place on November 6, 2017, and beginning November 15, 2017, equity shares of the company changed to IQVIA.  Exhibit D. Defendant sent Exhibit A to Plaintiff after QuintilesIMS changed its name to IQVIA.

quality of Defendant's market research property, products, or services.

24.     Exhibit A and Exhibit B advertise a commercially available opportunity for Plaintiff to provide valuable information and opinions in exchange for compensation from Defendant.

25.     Plaintiff did not expressly invite or give permission to anyone to send Exhibits A-B or any other advertisement from Defendant to Plaintiff's fax machine.

26.     Defendant is the world's largest "contract research organization" ("CRO").[4] Defendant serves health information industries, including the pharmaceutical, biotechnology, and medical device industries. It provides preclinical services including clinical monitoring and data management.

27.     Defendant's clients are companies in the health care industry including pharmaceutical companies, healthcare providers, and government-based entities. Defendant's clients are in the business of developing new medicines and drugs in the healthcare market, thus Defendant has an interest to expeditiously get its client's medical product onto the market.

28.     Defendant is a for-profit business organization. Its clients pay it for assisting in the preclinical process. Part of Defendant's business practice involves sending unsolicited faxes to medical providers soliciting their valuable participation and provision of valuable patient data and other information in exchange for compensation in the form of points redeemable for gift cards, tickets, and

---

[4]     *See* The Vall D'Hebron Campus signs a Prime Site Agreement with IQVIA, the world's largest clinical trials management company, https://www.iqvia.com/en/locations/spain/newsroom/2018/04/prime-site-agreement (last visited Mar. 28, 2019).

6

merchandise in Defendant's rewards program.

29. The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement…." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission…." *Id.,* § 227 (a)(5) (emphasis added).

30. The NCUFA prohibits any "person or entity, if either the person or entity or the recipient is located within the State of North Carolina, from (i) use of any telephone facsimile machine, computer, or other device to send or (ii) cause another person or entity to use a telephone facsimile machine to send an unsolicited advertisement to a telephone facsimile." N.C. Gen. Stat. Ann. § 75-116 (a).

31. Defendant's faxes advertise and solicit compensated participation in Defendant's commercially-available data collection business, whether for a client-funded study or to supplement or refine Defendant's commercially-available database.

32. On information and belief, Defendant provides non-cash points and compensation to induce health professionals to provide valuable information in "surveys" and "studies," and Defendant sells or licenses the collected information to Defendant's paying customers.

33. Defendant's unsolicited faxes damaged Plaintiff and the other class

members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving or sending authorized faxes, cause undue wear and tear on the recipients' fax machines, waste paper and ink toner, and always waste the recipients' valuable time in discerning the source and purpose of the unsolicited message. An unsolicited fax interrupts the recipient's privacy. Reviewing the fax wastes the recipient's valuable time that would have been spent on something else.

34.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant's unsolicited advertisements. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendant's unlawful advertisements.

<u>CLASS ACTION ALLEGATIONS</u>

35.     Plaintiff brings this case as a class action on behalf of himself and all others similarly situated as members of a class, initially defined as follows:

> All persons and entities who received one or more facsimiles at any time after April 5, 2015, from QuintilesIMS or IQVIA inviting them to participate in a study in exchange for points in a rewards program.

Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about the scope of Defendant's fax advertising practice and about any affirmative defenses Defendant pleads.

36.     Excluded from the class is Defendant, any entity in which any Defendant has a controlling interest, each of Defendant's officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

37.     In this action, Plaintiff intends to discover, include, and resolve the

8

merits of claims about all advertisements Defendant sent by fax, not merely the two faxes Defendant is known to have sent to Plaintiff.

38.     Defendant's fax advertising program involved other, substantially-similar advertisements soliciting medical professionals to provide valuable information in exchange for compensation.

39.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.  The action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

40.     **Numerosity/impracticality of joinder.** The class includes more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. Plaintiff does not know the precise number of class members or their identities, but expects obtain such information from Defendant's records or the records of third parties.

41.     **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which

9

may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.     Whether <u>Exhibit A</u>, <u>Exhibit B</u>, and other to-be-discovered facsimiles sent by or on behalf of Defendant solicited participation in studies in exchange for points in Defendant's reward program and advertised the commercial availability or quality of any property, goods or services;

b.     The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which it sent the faxes at issue;

c.     The manner and method Defendant or agents of Defendant used to send the faxes at issue to Plaintiff and the other class members;

d.     Whether Defendant violated the TCPA and the Court should award statutory damages to Plaintiff and the other class members;

e.     Whether Defendant violated the NCUFA and the Court should award statutory damages to Plaintiff and the other class members;

f.     If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion under the TCPA to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

g.     If the Court finds that Defendant willfully or knowingly violated the NCUFA, whether the Court should award reasonable attorneys' fees; and

h.     Whether the Court should enjoin Defendant from sending facsimiles like those at issue.

10

42. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because all were injured by the same wrongful conduct. Each received Defendant's unsolicited advertisements by facsimile during broadcasts to multiple targeted recipients. If Plaintiff prevails on his claims, then the other class members will prevail as well.

43. **Adequacy of representation.** Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class he seeks to represent. Plaintiff has retained attorneys who are competent and experienced in complex class action litigation, and in TCPA litigation in particular. Plaintiff intends to vigorously prosecute this action. Plaintiff and counsel will fairly and adequately protect the interest of the class.

44. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford and wanted to undertake individual litigation, such cases would unduly burden the court system. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

FIRST CAUSE OF ACTION

Telephone Consumer Protection Act, 47 U.S.C. § 227

45. Plaintiff incorporates the preceding paragraphs as though fully set

11

forth herein.

46.     Plaintiff brings Count I on behalf of himself and a class of similarly situated persons.

47.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

48.     Defendant sent Exhibit A and Exhibit B to Plaintiff's fax machine, and sent the same or substantially similar facsimiles to the telephone facsimile machines of the other class members (the "Faxes").

49.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."  47 U.S.C. § 227 (a) (4).

50.     The Faxes promote Defendant's commercially-available studies.

51.     Defendant did not obtain Plaintiff's express invitation or permission before sending any advertisement to Plaintiff by facsimile. Therefore, Defendant will not be able to allege or prove a defense of "prior express invitation or permission."

52.     Plaintiff does not have an "established business relationship" with Defendant, so Defendant cannot raise such an "EBR" defense to Plaintiff's claim. Moreover, Exhibit A and Exhibit B do not include the opt-out notice the TCPA requires on any fax sent on the basis of an EBR, foreclosing Defendant's attempt to

raise EBR as a defense to any class member's TCPA claim. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v). Exhibit A contains no opt-out information. Exhibit B does not contain an opt-out notice in the form required. Specifically, 47 C.F.R. § 64.1200 (a) (4) (iii) requires that every opt-out notice must set forth the requirements under 47 U.S.C. § 227 (b) (2) (E) for a binding request to prevent future advertising facsimiles: (1) the request must identify the telephone number or numbers of the telephone facsimile machine(s) to which the request relates; (2) the request must be made to the telephone or facsimile number of the sender; and (3) no person at the requesting party provide express invitation or permission to the sender "subsequent to such request." Exhibit B fails to identify that required information.

53.     Defendant sent Exhibits A-B to Plaintiff and other health professionals offering compensation in exchange for their participation in one or more internet or telephone surveys.

54.     Through Exhibits A-B, Defendant intended to gather opinions and other valuable market research data from participants and then provide that information to Defendant's paying clients in the healthcare industry.

55.     The TCPA provides a private right of action as follows:

> 3.     Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

13

> (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C)    Both such actions.

47 U.S.C. § 227 (b) (3).

56.    The Court may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

57.    Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as Exhibits A-B) to Plaintiff and the other class members without their prior express invitation or permission.

58.    The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if Defendant's actions were negligent. 47 U.S.C. § 227 (b) (3).

59.    Defendant is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, it owned the list to which faxes were sent, or under general principles of vicarious liability, including actual authority, had apparent authority and ratification.

60.    Defendant's actions damaged Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review Defendant's unlawful fax. Defendant's faxes unlawfully interrupted Plaintiff and the other class members' privacy

interests in being left alone. The subject faxes unlawfully used the fax machines of Plaintiff and the other class members.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds Defendant willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendant from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### Violation of the N.C. Gen. Stat. § 75-115, et seq.

61.     Plaintiff incorporates the preceding paragraphs 1-44 as though fully set forth herein.

62.     Plaintiff brings this Count II against Defendant on behalf of himself

and a class of similarly-situated persons.

63.     The Court has supplemental jurisdiction over this state law claim. 28 U.S.C. § 1367.

64.     Section 75-116 of the NCUFA provides in pertinent part as follows:

(a) No person or entity, if either the person or entity or the recipient is located within the State of North Carolina, shall (i) use any telephone facsimile machine, computer, or other device to send or (ii) cause another person or entity to use a telephone facsimile machine to send an unsolicited advertisement to a telephone facsimile machine.

(b) This section shall not apply to a person or entity that has an established business relationship with the recipient of the facsimile. However, the person or entity who sends an unsolicited advertisement under this subsection shall provide a notice in the unsolicited advertisement that: (i) is clear and conspicuous and on the first page of the unsolicited advertisement; (ii) states that the recipient may make a request to the sender to "do not send" any future unsolicited advertisements to a telephone facsimile machine and that the sender's failure to comply with the request is unlawful; and (iii) includes a toll-free domestic telephone number or facsimile machine number that the recipient may call at any time on any day of the week to transmit a request to "do not send" future facsimiles.

65.     Defendant's principal place of business is located in Durham, North Carolina. On information and belief, Defendant used a telephone facsimile machine, computer, or other device to send or caused another person or entity to use a telephone facsimile machine to send unsolicited advertisements to Plaintiff's telephone facsimile.

66.     Defendant has no established business relationship with Plaintiff, yet Defendant sent unsolicited faxes to Plaintiff.

67.     Exhibit A contains no opt-out information. Exhibit B articulates a means to "opt-out of receiving future faxes from IQVIA and/or its affiliates," but

16

does not identify the affiliates or indicate that the option may be exercised to prevent only advertisements (as opposed to preventing all fax correspondence). Exhibit B does not inform fax recipients that they can request the sender "do not send" any future unsolicited advertisement by facsimile or indicate that they may limit such a request to advertisements as opposed to all fax communications.

68.     Neither Exhibit A nor Exhibit B complies Section 75-116(b), because neither facsimile "states that the recipient may make a request to the sender to 'do not send' any future unsolicited advertisements." Neither fax contains the words "do not send." Therefore, any "established business relationship" Defendant might have had with any person it targeted with unsolicited advertisements is irrelevant under Section 75-116(b).

WHEREFORE, pursuant to N.C.G.S.A. § 75-118, Plaintiff respectfully demands judgment in favor of himself and all others similarly situated, and against Defendant, as follows:

A.     That the Court determine that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for the first violation of the NCUFA, one thousand dollars ($1,000) for the second violation, and five thousand dollars ($5,000) for the third and every other violation that occurred within two years of the first violation;

C.     That, if it finds Defendant willfully engaged in the act or practice, the

Court award reasonable attorneys' fees;

D.    That the Court enter an injunction prohibiting Defendant from violating the UFA; and

E.    That the Court award costs and such further relief as the Court may deem just and proper.

Respectfully submitted,

Richard E. Fischbein, MD, individually and as the representative of a class of similarly-situated persons

By:    _____
One of his attorneys

Ryan S. Luft
Ryan S. Luft, PLLC
3125 Kathleen Ave. #116
Greensboro, NC 27408
(336) 638-1789 (phone)
ryan@luftlaw.com

Phillip A. Bock (pro hac vice to be sought)
David M. Oppenheim (pro hac vice to be sought)
Tod A. Lewis (pro hac vice to be sought)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5500 (phone)
(312) 658-5555 (fax)
service@classlawyers.com

Richard Shenkan (pro hac vice to be sought)
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA  16107
(800) 601-0808 (phone)
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com

18

19